Filed 2/20/25  P. v. Norsworthy CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GREGORY NORSWORTHY,<br><br>Defendant and Appellant. | F087349<br><br>(Super. Ct. No. 1049430)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2007, defendant and appellant Gregory Norsworthy was convicted by a jury of conspiracy to commit assault with a deadly weapon and multiple other offenses. Norsworthy was sentenced to an aggregate term of 159 years to life in prison as a third-strike offender. The sentence consisted of several enhancements including a one-year prior prison term enhancement. In 2023, Norsworthy's sentence was recalled pursuant to Penal Code[1] section 1172.75. The trial court struck the enhancement for the now invalid prison prior, but otherwise left Norsworthy's sentence intact.

Norsworthy contends: (1) the trial court abused its discretion by concluding that striking or staying the enhancements would endanger public safety; (2) the court abused its discretion by not striking one of his prior strike convictions; and (3) the fourth amended abstract of judgment must be modified to include his actual days in custody through resentencing. The People agree the abstract of judgment must be modified to include Norsworthy's actual days of custody through resentencing but argue the judgment should otherwise be affirmed.

We will affirm the order but remand for the trial court to file an amended abstract of judgment reflecting Norsworthy's custody credits up to the date of resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Underlying Offenses*[2]

"The day after Bartlett was released from prison on parole, he and Norsworthy, along with Norman and Darlene Climer, drove to the home of [D.C.] and [T.P]. Bartlett and Norsworthy walked up to the home of [D.C.] and [T.P.]; the Climers waited in the car. [T.P.] knew Bartlett and Norsworthy, so he let them into his home. Once inside, Norsworthy brandished a gun and pushed [T.P.] against the refrigerator and held him in

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    On this court's own motion, we take judicial notice of our prior opinion affirming the convictions of Norsworthy and codefendant James Lynn Bartlett in *People v. Bartlett* (May 28, 2008, F052238) (nonpub. opn.) pursuant to Evidence Code sections 452, subdivision (d) and 459. This court summarized the facts underlying their convictions in the prior opinion, and we use parts of that factual summary here.

place with his arm across [T.P.]'s throat.  Norsworthy asked [T.P.] how to find [K.Q].  When [D.C.] tried to leave the room, Bartlett shoved her against a wall and held her in place for about five minutes.

"[T.P.] initially did not tell Bartlett and Norsworthy how to find [K.Q.], prompting Norsworthy to waive the gun about and point it at [D.C.]  [T.P.] then agreed to tell Bartlett and Norsworthy where [K.Q.] lived.

"Norsworthy and Bartlett forced [T.P.] to drive them to [K.Q.]'s house.  The Climers followed in their own car.

"[K.Q.] was working on a car outside his home when Norsworthy and Bartlett pulled up and walked toward him.  Norsworthy stated, 'We got a beef with you,' and Bartlett then kicked [K.Q.], knocking him down.  Norsworthy walked up and shot [K.Q.] in the neck.  [M.M.] saw the shooting from across the street and saw Norsworthy shoot [K.Q.] 'point blank, right in the face.'

"[J.W.] and [A.M.] resided in the home with [K.Q.].  [J.W.] recalled [K.Q.] stating, 'Don't do this here, not in front of my grandchildren.'  After [K.Q.] was shot, Bartlett and Norsworthy ran back to the Climers' car and drove around the block, where Bartlett and Norsworthy hopped out.  Bartlett ran back to [K.Q.]'s house, where he found [J.W.] administering CPR to [K.Q.].  Bartlett shoved her away and appeared to try to asphyxiate [K.Q.].

"[¶] … [¶]

"The shooting rendered [K.Q.] a quadriplegic.  He was on a respirator for 18 months following the shooting and needed constant nursing care.  Nurses assisted [K.Q.] with coughing because he was unable to cough on his own.  [K.Q.] could spend only four or five hours daily in a wheelchair and suffered from bedsores because he was bedridden for about 20 hours a day.  [K.Q.] needed nursing assistance while in court and testifying.

"[K.Q.] testified that 6 to 12 months before the shooting, Norsworthy beat him up.  Norsworthy was upset that [K.Q.]'s brother had become a police informer.  [K.Q.] stated that Norsworthy ordered him, [K.Q.], to kill his own brother for being an informer.  [K.Q.] and Bartlett had been good friends and were related by marriage.

"[¶] … [¶]

"[Detective Allen] Brocchini opined that Bartlett and Norsworthy were active participants in a criminal street gang, the Peckerwoods, at the time [K.Q.] was shot. Brocchini was of the opinion that Bartlett was a member, having admitted membership, and Norsworthy was an associate." (*People v. Bartlett, supra*, F052238.)

### B. Convictions, Sentence, and Abstracts of Judgment

In October 2002, the Stanislaus County District Attorney filed an indictment against Norsworthy and others, charging Norsworthy with conspiracy to commit murder (§§ 182, 187; count I), conspiracy to commit assault with a deadly weapon (§§ 182, 245, subd. (a)(2); count II), attempted murder (§§ 664, 187; count III), burglary (§ 459, subd. (1); count IV), false imprisonment (§ 236; count V), two counts of assault with a firearm (§ 245, subd. (a)(2); counts VI, IX), kidnapping (§ 207, subd. (a); count VII), mayhem (§ 205; count VIII), gang participation (§ 186.22, subd. (a); count XIV), and felony possession of a firearm (§ 12021, subd. (a); count XII). The indictment further alleged enhancements for personal use of a firearm (§ 12022.5, subd. (a)) as to counts I, II, IV through VI, and IX; personal infliction of great bodily injury (§ 12022.7, subd. (b)) as to counts I through III and IX; gang participation (§ 186.22, subd. (b)(1)) as to counts I through IX, personal discharge of a firearm causing great bodily injury or death (§ 12022.53, subd. (d)) as to counts III and VIII; and personal use of a firearm during commission of a felony (§ 12022.53, subd. (b)) as to count VII. The indictment also alleged Norsworthy had suffered two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as serious felony convictions (§ 667, subd. (a)), and had two prior prison terms (§ 667.5, subd. (b)).

In 2005, a jury found Norsworthy guilty of conspiracy to commit assault with a deadly weapon, false imprisonment, two counts of assault with a firearm, kidnapping, felony possession of a firearm, and gang participation. The jury found Norsworthy not guilty of conspiracy to commit murder, attempted murder, burglary, and mayhem. The

4.

jury found true the enhancements for personal use of a firearm, personal infliction of great bodily injury, and personal use of a firearm during commission of a felony.

On February 2, 2007, the trial court denied Norsworthy's *Romero*[3] motion and sentenced Norsworthy to 159 years to life in prison as a third-strike offender.[4] The sentence consisted of five consecutive terms of 25 years to life, plus 34 years for the following enhancements: five years for great bodily injury; two 4-year terms for personal use of a firearm; 10 years for personal use of a firearm during commission of a felony; two 5-year terms for a serious felony prior; and one year for the prison prior. Norsworthy was awarded 1,942 days of total custody credit for 1,689 days of actual credit and 253 days of conduct credit.

In 2020, the Department of Corrections and Rehabilitation (CDCR) sent a letter to the trial court identifying three errors in the second amended abstract of judgment: (1) incorrect citation to the enhancement under section 12022.53, subdivision (b); (2) incorrect term of four years stated instead of five years for the enhancement under section 12022.7, subdivision (b); and (3) incorrect citation of section 667.5, subdivision (a) to the five-year enhancement imposed under section 667, subdivision (a). On June 23, 2020, the court issued a third amended abstract of judgment to address these errors.

### C. Resentencing

At some point before April 2023, CDCR notified the trial court that Norsworthy had been identified as an individual potentially entitled to relief under Senate Bill

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[4] At the sentencing hearing, the trial court incorrectly stated the aggregate term was 158 years to life. However, the court clarified during the hearing that the term on the conspiracy count was enhanced by five years pursuant to section 12022.7, subdivision (b), not four years pursuant to section 12022.5 as the court had initially stated. This brought the aggregate term to 159 years to life.

No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483).[5] On April 19, 2023, the trial court appointed counsel to Norsworthy and scheduled a resentencing hearing. Norsworthy filed a motion asking the court to, in addition to striking the prison prior, strike his two 5-year enhancements under section 667, subdivision (a); strike, stay or reduce multiple gun enhancements; and consider striking multiple enhancements. Norsworthy also asked the court to resentence him without a prior strike conviction pursuant to section 1385, subdivision (a) and *Romero*. Norsworthy identified mitigating circumstances he believed supported his request for a reduced sentence. The prosecution filed a responsive motion conceding the prison prior must be stricken but opposing any other modification to Norsworthy's sentence.

At the resentencing hearing on December 8, 2023, the trial court clarified a discrepancy between the parties' briefing as to the length of Norsworthy's sentence with the various enhancements. After the court summarized the circumstances underlying Norsworthy's convictions, the court acknowledged Norsworthy had requested the court strike the prior strikes, the weapon enhancements, and the felony priors in addition to the prison prior. The court further acknowledged it must strike the prison prior and Norsworthy was entitled to a full resentencing. The court noted its authority to strike or stay all weapon enhancements, as well as the section 667, subdivision (a) enhancements. The court did not believe it had the authority to strike or dismiss the prior strikes as part of an alternate sentencing scheme not subject to amendments to section 1385. The court explained why it would not dismiss the prior strikes or otherwise modify Norsworthy's sentence:

---

[5]     Effective January 1, 2022, Senate Bill 483 added former section 1171.1, later renumbered section 1172.75 (Stats. 2022, ch. 58, § 12), to the Penal Code. (Stats. 2021, ch. 728, § 3.) Section 1172.75 rendered invalid any prior prison term enhancement (§ 667.5, subd. (b)) imposed prior to January 1, 2020, except for sexually violent offenses. While not relevant to the issues raised on appeal, section 1172.75 was further amended to add subdivision (f), effective January 1, 2025. (Stats. 2024, ch. 979, § 2.)

"In deciding whether to strike and/or dismiss a [section, ]667[, subdivision ](d) prior the Court must consider whether, in light of the nature and the circumstances of the defendant's present felonies and prior serious and/or violent felony convictions and the particulars of the defendant's background, character, and prospects the defendant may be deemed outside of the [T]hree [S]trikes law spirit in whole or in part; and hence, should be treated as though the defendant had not previously been convicted of one or more serious and/or violent felonies. The consideration is individualized as it must be.

"[Norsworthy]'s adult criminal history began in 1986 when he was 18 years old. He had been awarded to juvenile court before reaching the age of majority. He has suffered the following convictions: a 1980 -- a May of 1986, Penal Code Section 242 violation; a 1988 March, Vehicle Code Section 23152[, subdivision ](a) conviction; a May of 1991, battery, [section ]242 conviction; and a -- which those three were all misdemeanor offenses. A June 1st of 1993 Business and Profession Code [section ]4149 conviction, also a misdemeanor. In June of 1993 he was convicted of Vehicle Code Section 2800.2; received 20 days in custody. That was treated as a misdemeanor. As well as his November 1993 … Penal Code Section 148 violation. There was another battery conviction in January of 1994 for which he received a five-day sentence. And then in March of 1995 he violated Penal Code Section 496[, subdivision ](a) and received 60 days. In February of 1997 he, again, violated Business and Professions Code [section ]4149 and received a 30-day sentence. Those offenses, all of those that the Court has recited, were treated as misdemeanor offenses.

"In March of 1997 he violated Health and Safety Code Section 11350 and received 120 days. That was his first felony conviction. In January of 1998 he violated Vehicle Code Section[s] 10851 and 2800.2, and received a 240-day sentence. While on probation he did not do well and was sentenced, ultimately, to CDC after a violation of parole -- violation of probation. And then once he was released violated parole. In March of 1998 he was convicted of Penal Code Section 4573.6, and was sentenced to two years in CDC. In June of 1999, and significant to this case, he was convicted of two strikes, Penal Code Section[s] 422 and … 455. He received two years in the Department of Corrections. He was violated while on parole and was returned to prison in June of 2001. In November of 2003 he was convicted of Penal Code Section 4573.6, and received a three-year sentence in the Department of the Corrections. At the time of the sentencing he had a pending violation for Penal Code Section 245[, subdivision ](a)(1), a felony, and was ultimately sentenced to

7.

three years to run concurrent to the offenses at issue. And while the defendant was placed on parole each time[,] his performance was poor.

"Once committed to the Department of Corrections and Rehabilitation [Norsworthy] took classes to prepare him for his GED, and obtained that in 2017. He attended social skills groups and coping strategies course, a self-esteem group in 2015. In 2022 he began attending self-help SUD groups and health and wellness groups. It does not appear that [Norsworthy] consistently availed himself of programs at CDCR.

"Contrarily, his history of committing rules violations involving violence while committed is consistent and significant. His first rules violation occurred within six months of his commitment. In September of 2007 he committed a battery on an inmate causing serious bodily injury. In December of 2007 he received a rules violation for destruction of state property. In October of 2009 he attempted to murder another inmate by slashing the victim's neck. In August of 2012 he committed battery on an inmate. Less than six months later in January of 2013, [Norsworthy] was engaged in a fight. In March of 2013, two months later, [Norsworthy] was engaged in another fight. And another in August of 2013. [Norsworthy] was then found with an inmate-manufactured weapon involving two raiser [*sic*] blades that were taped together with a handle. He engaged in another fight in October of 2014. He received rules violations for fighting in 2018, twice; in 2019, once; and in January of 2020. In May of 2020 he committed a battery on a peace officer. And in October of 2020 he willfully obstructed a peace officer.

"Along with this information the Court has considered [Norsworthy]'s background. He was raised in Stanislaus County with both of his parents. Their marriage was in tact [*sic*]. His childhood was normal, according to [Norsworthy], with no reports of abuse or neglect; though he did not complete high school and had not obtained a GED and was awarded to juvenile court.

"The Court finds [Norsworthy] is not outside the spirit of the [T]hree [S]trikes law in whole or in part. [Norsworthy]'s criminal history is significant. Before imposition of this sentence his criminality was increasing in its seriousness and dangerousness. It reflects of history and violence culminating in a near murder, and actually -- the actual destruction of a life [K.Q.] had previously known. There's really no explanation for this. It is not explained by ace types of trauma. It is not explained by poverty or lack of privilege or racial inequities. Drugs may have played a role. And it appears that [Norsworthy] does have a history of drug use and

8.

commissions that are substance abuse related. If they have, however, [Norsworthy] has done almost nothing to address this issue. And what he hadn't -- and what he has done hasn't helped eliminate his propensity for violence. He continues to violate the rules of CDCR, even after what programming he has attended. The multiple fighting incidents, assaultive behavior are relatively recent and occurred since his commitment. He has demonstrated by this conduct he is unwilling or unable to change. This, coupled with extremely violent conduct out of custody, and certainly the callous conduct of the shooting someone at point blank range in the neck and face, … while lying on the ground, … because he was angry at the victim's brother, leads this Court to conclude that any modification of the sentence would endanger public safety. The Court makes that finding by clear and convincing evidence. I have considered post-conviction factors. I have considered his disciplinary record and record of rehabilitation. And I have not found that with age, time served, or diminished physical condition that [Norsworthy]'s risk for future violence has been diminished, really, whatsoever."

The court then struck the prison prior and resentenced Norsworthy to 125 years to life, plus a determinate sentence of 33 years for the enhancements. The fourth amended abstract of judgment was filed on December 20, 2023, with the same number of custody credits in the original 2007 abstract of judgment.

Norsworthy filed a timely notice of appeal.

## DISCUSSION

### I. Resentencing Under Section 1172.75

Norsworthy's prior prison term enhancement became legally invalid with the passage of Senate Bill 483. When a sentence is recalled to strike the invalid prison prior, the trial court must, as the court did here, conduct a full resentencing. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)

"The statute provides specific instructions for the resentencing under section 1172.75." (*People v. Carter* (2023) 97 Cal.App.5th 960, 966.) Resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing

pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) The court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

Section 1172.75, subdivision (d) "vests the superior court with broad discretion based on an inherently factual inquiry." (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856–857.) A court's finding that reducing a defendant's sentence would endanger public safety is reviewed for abuse of discretion. (*Id.* at p. 856.) "Under an abuse of discretion standard, ' "we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious." ' " (*Id.* at p. 857.) "Ultimately, the superior court's risk finding will be upheld 'if it falls within "the bounds of reason, all of the circumstances being considered." ' " (*Ibid.*)

### A. The Enhancements

Norsworthy contends the trial court abused its discretion by concluding that striking or staying the enhancements would endanger public safety. Norsworthy argues there is no conceivable way striking any or all the enhancements would endanger public safety because he would still be incarcerated for the rest of his life even if the court had stricken all the enhancements.

As stated above, when the court resentences a defendant under section 1172.75,

10.

the court "shall … apply any other changes in law that reduce sentences or provide for judicial discretion." (§ 1172.75, subd. (d)(2).) Effective January 1, 2022, Senate Bill No. 81 (2021−2022 Reg. Sess.) (Senate Bill 81) amended section 1385 to include subdivision (c). (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(1) provides that the court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2) specifies nine mitigating circumstances the court must consider in determining whether to dismiss an enhancement. "Proof of the presence of one or more of [the mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) The statute defines " '[e]ndanger public safety' " to mean "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

Under section 1385, as amended by Senate Bill 81, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.) As with a determination of risk under section 1172.75, a trial court's determination that dismissing an enhancement would endanger public safety is reviewed for abuse of discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

In *Gonzalez*, the Court of Appeal examined the applicable legal standard for determining whether dismissal of an enhancement would endanger public safety. (*Gonzalez, supra*, 103 Cal.App.5th at p. 227.) The trial court declined the defendant's request to dismiss a 25-year-to-life firearm enhancement (§ 12022.53, subd. (d)) based on its finding that the defendant " 'presently … does represent a danger to society.' " (*Gonzalez*, at p. 224.) The *Gonzalez* court concluded the trial court applied an erroneous

11.

legal standard because the "plain words of [section 1385] do not support the trial court's singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228.) "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Ibid.*)

The *Gonzalez* court found that *People v. Williams* (2018) 19 Cal.App.5th 1057, relied on by Norsworthy, "although arising under a different sentencing statute, supports [its] interpretation of the plain meaning of section 1385, subdivision (c)(2)." (*Gonzalez, supra*, 103 Cal.App.5th at p. 228.) The defendant in *Williams* was serving a 193-year term when he sought resentencing under section 1170.126. (*Williams*, at p. 1060.) Section 1170.126 permits the trial court to resentence a third-strike offender with a strike that is neither serious nor violent as a second-strike offender subject to certain disqualifying exceptions. (§ 1170.126, subds. (a), (e).) "If the prisoner is not subject to one of the disqualifying factors, then the trial court shall resentence him under the two strikes provision 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)" (*Williams*, at p. 1061.) The defendant in *Williams* argued the trial court abused its discretion in finding resentencing him would endanger public safety when he would be 77 years old at the earliest possibility of obtaining parole. (*Id.* at p. 1062.) Like *Gonzalez*, the *Williams* court concluded that "[d]etermining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is

granted and the defendant is resentenced.  A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her 70's.  This applies with even greater force to a defendant who would still be serving a sentence greater than a human lifespan even if the petition were granted." (*Williams*, at p. 1063.)  The court concluded, "The trial court's failure to consider when, if ever, defendant would be released if the petition was granted was an abuse of discretion." (*Id.* at p. 1064.)

"In the absence of evidence to the contrary, we presume that the trial court considered all of the relevant factors and properly applied the law" in sentencing a defendant. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638.)  Here, the record reflects the trial court properly considered Norsworthy's future dangerousness in declining to modify his sentence.  The court expressly found that his "risk for future violence" has not diminished "whatsoever" "with age, time served, or diminished physical condition."  Nothing in the record supports Norsworthy's argument the court failed to consider the fact that striking any or all the enhancements would have left a sentence of 125 years to life.  The court's discussion about Norsworthy's sentence and the parties' resentencing motions evince the court's solid understanding of the total term for the enhancements and the balance for the primary offenses.  Norsworthy's resentencing motion specified he was sentenced to an indeterminate term of 125 years to life plus 34 years for the various enhancements.  Norsworthy's motion expressly argued dismissing the enhancements would not endanger public safety and noted again the enhancement terms total 34 years.  At the hearing, the court discussed the applicable sentences for the various enhancements.  The court observed that the People's briefing incorrectly stated Norsworthy's sentence as 125 years to life, plus 33 years.  The court had reviewed the original and amended abstracts of judgment to figure out the difference between the two parties' sentence calculations and concluded the difference was based on an error in an abstract of judgment.  After the court struck the prison prior, the court

13.

stated Norsworthy's remaining sentence would remain imposed, "which is an indeterminant sentence of 125-years-to-life; and a determinant sentence of 33 years for the two [section ]667[, subdivision ](a) five-year priors, the 18-year gun enhancements, and five years for the great bodily injury enhancement."

Norsworthy argues there is no conceivable way striking any or all the enhancements would endanger public safety because he would still be incarcerated for the remainder of his life based on the term of 125 years to life without the enhancements. Norsworthy contends no valid finding of danger to public society is possible on this record. We disagree. The trial court's determination was based on Norsworthy's significant criminal history, his consistent and significant rules violations in prison involving violence, and the lack of explanation in Norsworthy's background for his "near murder" of the victim in the underlying crimes. Norsworthy's criminal history dated back to when he was 18 years old in 1986, and the court observed Norsworthy's criminality was increasing in seriousness and dangerousness before his conviction. Norsworthy's past performance on parole was poor. Though Norsworthy had made some effort at rehabilitation, he also showed consistent violence against inmates and peace officers while in prison. These violent incidents included attempted murder on another inmate by slashing his neck. The court's findings are aggravating circumstances properly considered by the court in resentencing Norsworthy. (See *People v. Garcia, supra*, 101 Cal.App.5th at pp. 857–858 [proper for the court to consider aggravating circumstances promulgated by the Judicial Council in determining risk under § 1172.75]; *People v. Thomas* (1992) 4 Cal.4th 206, 211−212 [the trial court may consider the Cal. Rules of Court in determining whether to dismiss an action under § 1385]; Cal. Rules of Court, rule 4.421(a)(1) [crime involved great bodily harm], (b)(1) [defendant has engaged in violent conduct that indicates a serious danger to society], (b)(2) [defendant's prior convictions are numerous or of increasing seriousness], (b)(5) [defendant's prior performance on parole was unsatisfactory].) Norsworthy does not argue there were any

mitigating circumstances and, as observed by the court, nothing in Norsworthy's background or upbringing explains his criminal and violent behavior. The court's risk determination was based on undisputed evidence and was neither arbitrary nor capricious.

### B. Romero *Motion*

Norsworthy argues the trial court abused its discretion by concluding that striking one of the strikes would "endanger public safety" when his two-strike term would be nearly 80 years.

At the resentencing hearing, the trial court stated it did not have the authority to strike or stay Norsworthy's prior strikes because "they're not enhancements," but instead are an "alternate sentencing scheme" not subject to relief under Senate Bill 81 and the amendments to section 1385. Norsworthy claims the court's belief must have been based on *People v. Dain* (2024) 99 Cal.App.5th 399 (*Dain*), review granted May 29, 2024, S283924. In *Dain*, the First District Court of Appeal concluded that section 1385, subdivision (c) "does not apply to a decision whether to dismiss a strike because the subdivision 'applies only to an "enhancement," and the Three Strikes law is not an enhancement.' " (*Dain*, at p. 411.) The *Dain* court reversed the trial court's order dismissing the defendant's strike and remanded for the trial court to resentence the defendant as a person with a prior strike. (*Id.* at p. 404.) Norsworthy concedes if *Dain* survives review,[6] this would presumably defeat an argument regarding the trial court's "endanger public safety" finding and denial of his request to dismiss a prior strike, but he nonetheless raises the question because *Dain* is on review.

The trial court's belief about Senate Bill 81's application to prior strikes could not have been based on *Dain* because Norsworthy's resentencing was in December 2023 and

---

[6] In granting review in *Dain*, the Supreme Court framed the issue to be addressed as: "Did the Court of Appeal err in remanding the case with directions to reinstate the strike finding and to resentence defendant as a person who has suffered a prior strike conviction under the Three Strikes Law?" (*People v. Dain*, S283924, Supreme Ct. Mins., May 29, 2024.)

*Dain* did not issue until 2024. However, before Norsworthy's resentencing, the Third District Court of Appeal in *People v. Burke* (2023) 89 Cal.App.5th 237 similarly concluded that section 1385, subdivision (c) does not apply to the trial court's authority to dismiss a prior strike conviction under the Three Strikes law. The *Burke* court observed that section 1385, subdivision (c)(1) outlines mitigating factors the trial court must consider in deciding whether to " 'dismiss an *enhancement*.' " (*Burke*, at p. 243.) "The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term." ' [Citations.] It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Ibid.*) "The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement." (*Id.* at p. 244.) Other Courts of Appeal after *Burke* likewise concluded section 1385, subdivision (c) does not apply to the Three Strikes law. (See *People v. Olay* (2023) 98 Cal.App.5th 60, 65−67; *People v. Dowdy* (2024) 107 Cal.App.5th 1, 9−10.)

We are unpersuaded the ultimate outcome in *Dain* affects our disposition under the circumstances in this case. Specifically, Norsworthy did not ask the trial court to strike his prior strikes pursuant to section 1385, subdivision (c) but instead sought their dismissal pursuant to section 1385, subdivision (a) and *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), and the court's discussion at the hearing reflects it examined Norsworthy's *Romero* motion pursuant to those authorities. Section 1385, subdivision (a) permits a trial court to dismiss an action "in furtherance of justice" and gives courts the power to dismiss a prior strike. (*Romero, supra*, 13 Cal.4th at p. 504.) Pursuant to *Williams*, in deciding whether to dismiss a prior strike, the court must consider "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's

16.

spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.) We therefore examine whether the court properly denied Norsworthy's *Romero* motion under *Williams*.

A trial court's denial of a *Romero* motion is reviewed for abuse of discretion. (*Williams, supra*, 17 Cal.4th at p. 158.) There is a "strong presumption that any sentence that conforms to [the Three Strikes law] is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling" on whether to dismiss a prior strike. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "Extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very statutory scheme within which he squarely falls and whose continued criminal career the law was meant to attack." (*People v. Strong* (2001) 87 Cal.App.4th 328, 332.) The "circumstances where no reasonable people could disagree that [a career] criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony,* at p. 378.)

In discussing Norsworthy's *Romero* motion, the trial court cited his lengthy and significant criminal history, consistent violent behavior while incarcerated, and the severity of the victim's injury from the underlying offenses. The court recognized Norsworthy's efforts at improvement while imprisoned but observed that nothing in his background explained his criminal conduct. Based on these findings, the court found Norsworthy was not outside the spirit of the Three Strikes law in whole or in part. The record supports the court's findings, and the court did not abuse its discretion in denying the *Romero* motion.

Norsworthy concedes *Dain* did not undermine the trial court's authority to dismiss a prior strike under section 1385, subdivision (a) and *Romero* but argues the same abuse

of discretion problem would remain about the trial court's finding of "endanger public safety" if the Supreme Court concludes in *Dain* the decision whether to strike a strike falls under section 1385, subdivision (c). This contention is meritless because, as discussed above, the court denied the *Romero* motion pursuant to section 1385, subdivision (a) and *Williams*, not section 1385, subdivision (c).

## II.    Custody Credits

Norsworthy contends the fourth amended abstract of judgment must be modified to include his actual days in custody through resentencing. The People agree, as do we.

The sentencing court has a duty to determine the total number of days a defendant has been in custody and include the total number of days to be credited in the abstract of judgment. (§ 2900.5, subd. (d).) "Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." (§ 2900.1.) "[W]hen a prison term already in progress is modified …, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29; see also *People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

The fourth amended abstract of judgment filed December 20, 2023, does not reflect Norsworthy's actual days of credit between his original sentencing and his resentencing. The matter must be remanded for the trial court to recalculate Norsworthy's custody credits for actual time served through his resentencing and amend the abstract of judgment accordingly.[7]

---

[7]     The parties dispute the number of additional days of credit Norsworthy is entitled to. We leave this determination to the trial court to address on remand.

**DISPOSITION**

The matter is remanded for the trial court to calculate Norsworthy's actual custody credits.  The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  The trial court's order resentencing Norsworthy is otherwise affirmed.


HILL, P. J.

WE CONCUR:


FRANSON, J.


FAIN, J.*

---

\*      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.